**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0850n.06
Filed: October 17, 2005

**No. 04-4258**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CINCINNATI SCHOOL DISTRICT, et. al., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| BOARD OF EDUCATION OF THE STATE OF | ) | **O P I N I O N** |
| OHIO, et. al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE:** **COLE, ROGERS, and McKEAGUE, Circuit Judges.**

**DAVID W. McKEAGUE, Circuit Judge.** Residents of Madeira, Ohio petitioned the Board of Education of the State of Ohio ("State Board") to transfer their properties from the Cincinnati School District ("CSD") to the Madeira School District. CSD opposed such a transfer on the grounds that it would exacerbate racial isolation in its district. During the pendency of the procedure set forth under Ohio law for determining whether a transfer petition should be granted, Plaintiffs filed suit in federal court seeking an injunction prohibiting the transfer of the properties at issue out of the CSD. The district court granted Defendants' motion for judgment on the pleadings on three independent bases–Eleventh Amendment immunity, lack of ripeness, and abstention. Plaintiffs filed a timely notice of appeal. For the reasons set forth below, we affirm the judgment of the district court with one modification.

## I.  BACKGROUND

On March 21, 2000, the owners of four properties located on Windridge Drive in Madeira, Ohio filed a request with the State Board to have their properties transferred from the CSD to the Madeira School District.  Ohio law specifically provides for a comprehensive analysis and administrative process to evaluate and review such a proposed repositioning of school district boundaries.  *See* Ohio Rev. Code § 3311.24; Ohio Admin. Code § 3301:89-02.  The State Board begins by soliciting information from the potentially affected school districts.  A referee holds an administrative hearing during which the district which would lose territory under the proposed transfer may oppose the transfer by presenting witnesses, cross-examining the witnesses of the petitioners, and by offering evidence in support of its position.  The referee then weighs all the evidence and is required to consider ten specific factors before issuing a report and recommendation to the State Board.  The parties may submit formal objections to the report and recommendation before the State Board decides to approve, disapprove or modify the referee's recommendation. The decision can then be appealed to the state court system.  Ohio Rev. Code § 119.12.  The school district subject to gain additional property may ultimately refuse to accept any additional territory regardless of the decision reached by the State Board or the courts.  *Garfield Heights City School Dist. v. State Bd. of Educ.*, 646 N.E.2d 163, paragraph one of the syllabus (Ohio 1995).

After the Madeira residents on Windridge Drive requested the transfer, the State Board sought information regarding the proposed transfer from both affected school districts as required by law.  The Madeira School District promptly provided information in response to the State Board's query, but the CSD did not respond until years later.  Instead of challenging the proposed

transfer in the state administrative proceeding, the CSD, its superintendent, and its board members filed a complaint in federal court alleging that the proposed transfer would violate the Equal Protection Clause and 42 U.S.C. § 1983 by causing an increase in racial isolation within the CSD. The complaint also asserts a claim for illegal gerrymandering and discriminatory practices and seeks declaratory judgment and an injunction preventing the State Board from transferring the properties at issue out of the CSD. The named defendants are the State Board, the State Superintendent of Public Instruction ("State Superintendent"), and several (but not all) individual members of the State Board.

Defendants filed a motion for judgment on the pleadings which was granted by the district court. The district court concluded that Plaintiffs' claims were barred by the Eleventh Amendment and dismissed the complaint with prejudice. The district court went on to opine that even if the claims had not been barred by the Eleventh Amendment, dismissal was proper on the basis that the claims were not ripe and on the basis that the facts required the federal court to abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiffs filed a timely notice of appeal.

After this appeal was briefed, the state administrative proceeding to decide the transfer petition was conducted. The court granted the Board's motion to supplement the record with documents resulting from the state proceeding. After the initial hearing the referee issued an R&R

recommending denying the application for transfer, and the Board adopted that recommendation.[1]

The property owners who filed the petition for transfer appealed the Board's decision.

## II.  ANALYSIS

**A.     Standard of Review**

Whether the district court properly dismissed a suit based on the pleadings is a question of law subject to de novo review.  *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004). The court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims which would entitle him to relief. *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393.  "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *accord Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997).

**B.     Ripeness**

The district court correctly held that it did not have proper subject matter jurisdiction over Plaintiffs' claims because they were not ripe.  The ripeness doctrine is typically thought of as an

---

[1]Although the R&R does not explicitly say as much, it apparently recommended that the transfer petition be denied because it was a thinly-veiled ploy to raise property values.  At no time during the pendency of the transfer petition was there a child residing in the affected territory who attended public school.  Furthermore, the referee found that none of the children would have attended public school even if the transfer was granted.

equitable doctrine, albeit one of a threshold nature. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). In some circumstances, however, as in this case, ripeness concerns keep a case from qualifying as an Article III case or controversy. "The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire & Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987) (citations omitted). The ripeness "doctrine exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 399 (6th Cir. 2001). In order to determine whether claims are ripe, the Court examines the following factors: (1) whether the factual record is sufficiently developed to allow for fair adjudication; (2) the likelihood that the harm alleged will ever come to pass; and (3) hardship to the parties if judicial review is denied. *Adult Video Ass'n v. United States*, 71 F.3d 563, 568 (6th Cir. 1995). The district court analyzed these three factors and concluded that Plaintiffs' claims were not ripe.

On appeal Plaintiffs assert that because of the fact-intensive nature of their claims it was improper for the district court to evaluate ripeness in the context of a motion for judgment on the pleadings. This argument evidences a fundamental misunderstanding of the nature of the ripeness doctrine. Federal courts do not have subject matter jurisdiction to hear claims which are not ripe. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002); *Bigelow v. Michigan Dept. of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992). Plaintiffs have the burden to allege facts in their complaint sufficient to establish that the court has subject matter jurisdiction. *See* Fed. R. Civ. P. 8(a)(1); *Bd. of Trustees of Painesville Tp. v. City of Painseville*, 200 F.3d 396, 398 (6th Cir. 1999); *Musson*

*Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). This Court is required to accept all factual allegations in the complaint as true when analyzing whether the claims are ripe on a motion for judgment on the pleadings, but Plaintiffs are not entitled to additional time to develop evidence regarding ripeness when subject matter jurisdiction was not adequately alleged in the complaint. The district court appropriately examined whether the allegations in the complaint were sufficient to meet the three prongs of the ripeness test.

The district court concluded that Plaintiffs' allegations do not demonstrate that the factual record is sufficiently developed to permit review. Specifically, the district court found that Plaintiffs' refusal to participate in the transfer process by not submitting the information requested by the State Board prevented necessary facts from being available for review. Since that determination, the CSD did comply with the request for information so that the state transfer proceeding could go forth. However, the result of that proceeding was a determination by the State Board to *deny* the transfer petition. Since there has not yet been a decision to allow the Windridge Drive properties to be transferred out of the CSD, there is no factual record which demonstrates whether such a decision was made for impermissibly discriminatory reasons. Accordingly, this factor weighs in favor of finding that Plaintiffs' claims are not ripe. Plaintiffs do not attack this conclusion directly, but merely reiterate their contention that this factor cannot be analyzed without benefit of discovery. This argument has already been discussed and rejected.

Regarding the next factor, the district court concluded that it was impossible to quantify the likelihood that the transfer Plaintiffs sought to enjoin would ever take place. The district court observed that although the transfer proceeding had been commenced, there were several steps at

which the transfer could be rejected.[2]  The State Board could refuse to approve the transfer.  *See*

Ohio Rev. Code § 3311.24; Ohio Admin. Code § 3301:89-02.  The common pleas court could

overturn a decision to approve the transfer.  *See* Ohio Rev. Code § 119.12.  A court decision

upholding the approval of the transfer could be overturned on appeal to the Ohio Court of Appeals,

the Ohio Supreme Court, and even the United States Supreme Court.  *See id.*, Ohio Sup. Ct. R. III,

U.S. Sup. Ct. R. 10.  Finally, even if the transfer was approved at all those levels the Madeira School

District could refuse to accept the Windridge Drive properties.  Ohio Rev. Code § 3311.24(A)(1);

*Garfield Heights City School Dist. v. State Bd. of Educ.*, 646 N.E.2d 163, syllabus at paragraph one

(Ohio 1995).

The subsequent course of events has borne out the district court's skepticism regarding the

likelihood of harm.  The State Board denied the petition for transfer.  The owners of the Windridge

Drive properties have appealed that decision to the state courts, but the fact that the transfer actually

has been denied at one stage in the proceeding supports the district court's conclusion that the nature

of the proceeding made that result possible.  In order to meet this prong of the ripeness analysis a

plaintiff must established a "credible fear" that the anticipated constitutional violation will come to

pass.  *See Norton*, 298 F.3d at 554.  The district court did not err when it concluded that no such

credible fear was alleged in the complaint.

---

[2]The district court properly noted that it was permitted to take judicial notice of the statutory
framework governing the procedure for approving a transfer.  *See Val Decker Packing Co. v. Corn
Products Sales Co.*, 411 F.2d 850, 852 (6th Cir. 1969) .

Finally, the district court held that neither party would be harmed if judicial review was denied. Plaintiffs assert that they would be harmed because the state transfer procedure does not provide them with an adequate forum to raise their constitutional claims. Plaintiffs have misunderstood the hardship requirement of ripeness. To determine hardship, this court examines only what difficulties befall Plaintiffs during the pendency of this proceeding. Hardship analysis thus concerns harm occurring presently and until a court hears the claims at issue, not whether Ohio agencies or courts will serve as an appropriate forum for those claims in the future. At oral argument, Plaintiffs conceded that they are currently suffering no hardship whatsoever. This factor indicates that their claims are not ripe.

The district court's proper holding that Plaintiffs' claims are not ripe is sufficient to affirm its grant of Defendants' motion for judgment on the pleadings for lack of subject matter jurisdiction. The district court, however, dismissed the case "with prejudice." Plaintiffs argue on appeal that even if dismissal was proper it should have been without prejudice. We agree. Because we affirm the dismissal of this case due to a lack of jurisdiction, such dismissal will be without prejudice. *See Bauer v. RBX Indus., Inc.,* 368 F.3d 569, 581 (6th Cir. 2004) (vacating the district court's judgment for lack of jurisdiction and noting that it "should have dismissed the [Labor Management Relations Act] claim without prejudice"); *Mitan v. Int'l Fid. Ins. Co.*, 23 Fed. App'x 292, 298 (6th Cir. 2001) (noting that "[d]ismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice."). Regardless of whether the jurisdictional ground for dismissal is ripeness or state sovereign immunity, the result as to prejudice is identical:

dismissal will be without prejudice. We therefore find it unnecessary to determine whether the district court properly dismissed this case pursuant to state sovereign immunity.

Furthermore, this court, after concluding that no jurisdiction exists, may not examine *Younger* abstention. *See Younger v. Harris*, 401 U.S. 37, 38-42 (1971) (dismissing the cases of three intervening plaintiffs for lack of equitable jurisdiction without reaching the issue of abstention, but abstaining for the lone remaining plaintiff who had a live controversy). Jurisdiction must exist before a court can abstain. *See id.* We therefore do not reach the abstention issue.

### III. CONCLUSION

The district court did not err when it granted Defendants' motion for judgment on the pleadings because Plaintiffs claims are not ripe. However, the dismissal of Plaintiffs' claims against the board member defendants should have been without prejudice. Accordingly, the judgment of the district court is **AFFIRMED** but modified to reflect dismissal of the claims against the individual board member defendants without prejudice.